30 So.2d 270

## NORTH CAROLINA MUT. LIFE INS. CO. v. JONES.

### 6 Div. 317.

Court of Appeals of Alabama.

March 11, 1947.

Rehearing Stricken April 8, 1947.

Jackson, Rives & Pettus, of Birmingham for appellant.

F. D. McArthur, of Birmingham, for appellee.

CARR, Judge.

This appeal is prosecuted from a judgment in the lower court in favor of the plaintiff. The basis for the suit is a life insurance policy issued by defendant below to Dorothy Lawrence Dandridge, the insured, and naming appellee, Addie Dandridge Jones, the beneficiary. It appears that Addie is the aunt of Dorothy, and the former assumed the responsibility of paying the premiums required under the terms of the policy.

The disputed factual issues revolve around only one inquiry: Had the policy lapsed at the time of the death of the insured on account of a default in premium payments? The jury in the lower court, by its verdict, answered this question in the negative, and on motion for new trial the presiding judge sustained this finding.

The effective date of the policy is June 24, 1935. The stipulated premium was $13.85, payable in advance on the 24th day of each June and December thereafter for twenty years or until the prior decease of the insured. A grace period of thirty-one days is provided. The insured died on November 20, 1944.

Appellee rested her case as to the disputed facts upon her testimony alone. She testified that she paid each semi-annual premium installment as it came due or within the grace time, with the exception of the last payment. As to this one, she paid $27.70 which was intended by her, and did in fact, settle the premiums due December 24, 1943, and June 24, 1944. With reference to this payment we will have more to say.

The testimony of the beneficiary was not supported by the introduction of any receipts with the exception of the $27.70 payment just indicated. Her explanation of her failure to do so was attributable to her accustomed practice of burning each prior receipt when she would receive a subsequent one.

To offset this evidence and show a contrary state of facts, appellant, in addition to other testimony, tendered a ledger sheet which it claimed reflects the true situation with reference to the premium payments throughout the existence of the policy. We have this document before us in photostatic form. It discloses that beginning with the issuing date of the policy to and including July 13, 1942, the semi-annual payments were made within the required time and in the amounts of $13.85. We find one or two incidents of a slight delay, but it is of no material consequence to the instant inquiry.

Taking up the record at the date just indicated, it shows that the premium installment next due, namely on December 24, 1942, was satisfied on March 22, 1943, and the June 24 and December 24, 1943, installments were each settled on January 31, 1944.

It appears without dispute in the evidence that on January 12, 1944, appellee paid $27.70, to which we made reference above. It is not contended otherwise than that this was the last payment made.

On the last named date the appellant furnished the beneficiary a receipt which is in evidence and appears in the following form:

"North Carolina Mutual Life Insurance Company

"Durham, North Carolina

"Receipt for Deposits for Reinstatement of the Policy

"Received of Miss Dorothy L. Dandridge $27.70 on account of arrears, Policy No. 94854. If the application for reinstatement is not accepted by the company, the above amount will be refunded.

"Date Jan. 12th, 1944    P. S. Westry

"District Bham            Signature of Agent"

It was stated by defendant's witnesses that the delayed date on the ledger sheet indicating a recordation of the last payment was due to the fact that authority had to

be received from the home office of an acceptance of the reinstatement application.

To counteract the evidential significance against the claims of the appellee which appear in the receipt for reinstatement payments, she testified that she did not read the paper and was not aware of its contents.

It was shown by evidence introduced in behalf of the insurer that agents of the company went to the home of the beneficiary the latter part of December, 1943, and discussed with her the matter of the lapsed condition of the policy in question and obtained the assurance from her that she would come to the office and pay the amount in arrears; that she did come, as promised, and paid $27.70 which was the necessary amount to satisfy the installments due June 24, 1943, and December 24, 1943. At the time of the visit to the office, to which reference has just been made, the address of the insured was ascertained to be Montgomery, Alabama. A reinstatement application was sent to her at the given address and later returned properly executed.

Appellee did not deny in her testimony that the agents came to her home, but asserted that the conversation during the visit related to another policy.

We have herein set out with a degree of particularity the tendencies of the evidence and the contentions of the party litigants.

This we have done so that the conclusions we have reached may be fairly and clearly illustrated.

█ We are unable to accord merit to the position of the appellant that the general affirmative charge was due in its behalf. The beneficiary testified that she had paid all required premiums and in this manner a disputed factual issue arose. This made the general affirmative charge inapt. McMillan v. Aiken, 205 Ala. 35, 88 So. 135; Crandall-Pettee Co. v. Jebeles & Colias Conf. Co., 195 Ala. 152, 69 So. 964; Watts v. Metropolitan Life Ins. Co., 211 Ala. 404, 100 So. 812; National Order of Mosaic Templars of America v. Bell, 21 Ala.App. 401, 108 So. 636; Wood v. Hacker, 23 Ala.App. 12, 121 So. 437.

█ We now come to consider the action of the court in overruling the motion for a new trial on the assigned ground that the verdict of the jury was contrary to the great weight of the evidence. We find our task here difficult and delicate. We recall that it has been often said that a verdict of the jury is a sacred and solemn pronouncement. We fully realize also that appellate courts should indulge every presumption in favor of the judgment of the lower court in his action in overruling a motion for a new trial.

These rules must guide us, but they should not and will not deter us from the path of judicial duty to set aside a verdict of a jury if, after a studious and diligent consideration of the evidence, we reach the conscientious conclusion that the preponderance of the evidence against the verdict is so decided as to clearly indicate and convince us that it is unjust.

Reverting briefly to the evidence in the case: In the last analysis it is evident that much depends on whether or not, in fact, the June 24, 1943, installment was satisfied. If, contrary to the testimony of the appellant's witnesses and the record evidence in support thereof, this is true, it follows that the last payment of $27.70 should have been credited, one half of the amount to the December 24, 1943, and one half to the June 24, 1944, installments. In this event the policy would have been in force and effect at the time the insured died. This insistence would lead to the inevitable conclusion that the reinstatement transaction was unnecessary and of no consequence, and the beneficiary would have paid on January 12, 1944, a premium installment that was not due until June 24, 1944, and not in default until thirty-one days thereafter.

A position that is attempted to be established by uncertain, unsupported, and unreasonable testimony should not be sustained against proof of contrary facts if the latter find support in dependable, corroborative, trustworthy, and reasonable testimony.

█ As we view our task, we are confronted with just this situation in the instant inquiry. We are forced to the conclusion, therefore, that the motion for a new trial should have been granted. The

following authorities pronounce the rule that must guide us: Watts v. Metropolitan Life Ins. Co., 211 Ala. 404, 100 So. 812; Cobb v. Malone, 92 Ala. 630, 9 So. 738; American Life Ins. Co. v. Anderson, 246 Ala. 588, 21 So.2d 791; Independent Life Ins. Co. v. Carroll, 219 Ala. 79, 121 So. 88; Independent Life Ins. Co. v. Woods, 23 Ala.App. 590, 129 So. 487; Hale v. Layer, Ala.App., 22 So.2d 345, certiorari denied 247 Ala. 10, 22 So.2d 349.

It follows, therefore, that the judgment of the lower court is ordered reversed and the cause is remanded.

Reversed and remanded.

## On Rehearing.

CARR, Judge.

In brief, on application for rehearing, counsel for appellee makes this statement: "I have been honest in facing the issues squarely as I have always been notwithstanding that uncalled for statement in the opinion, that 'A position is attempted to be established by uncertain, unsupported, and unreasonable testimony should not be sustained against 'proof of contrary facts if the latter find support in dependable, corroborative, trustworthy, and reasonable testimony.' I have never over a long and honorable career at this bar and at the bar of this state and in a public capacity done or attempted to do anything that smack of an attempt to establish a position in any case by 'uncertain, unreasonable and unsupported testimony.'"

■ The portion of the opinion is not accurately quoted, as will be observed by comparison. However, we were simply commenting on the solemn duty of the court when faced with a situation where a verdict is sought to be sustained on evidence that is "uncertain, unsupported, and unreasonable," when against this position there is proof of facts that are "dependable, corroborative, trustworthy, and reasonable."

It appears to us that this should be the fair construction of what is stated in the opinion. Since counsel places upon it an entirely different meaning, out of deference to him we do not hesitate to say that this court, and particularly the writer of the opinion, did not intend to cast or suggest any personal reflection on the attorneys in the case. In fact, no such idea or thought ever entered the mind of any member of this court.

What we have said above is only in explanation of the misconception of our original opinion.

We come now to consider the application for rehearing.

This appeal was submitted in this court on November 29, 1946. At this time appellant filed a brief with certificate that a copy of same had been served upon opposing counsel. On February 10, 1947, attorney for appellee filed a reply brief, but without certification that a copy of same had been served on counsel for appellant. The opinion in the cause was handed down on March 11, 1947. On March 25, 1947, attorney for appellee filed in this court an application for rehearing accompanied by brief for the applicant, but without a certificate of counsel that a copy of such brief had been delivered to opposing counsel.

Supreme Court Rule No. 38, Code 1940, Tit. 7 Appendix, provides:

"All applications for rehearing must be filed with the clerk of the court, accompanied by brief for the applicant and a certificate of counsel that a copy of such brief has been delivered to opposing counsel, within fifteen days after the rendition of the judgment whether such period extends beyond the term of the court or not; and such application may be passed upon at any regular or special term of the court. No application shall be received or filed which is not presented in strict compliance with this rule, and no second application shall be received or filed in any case. Without the order of the court or a justice thereof, the pendency of an application for rehearing shall not stay or suspend the execution of the judgment of the court. No appellee can, as matter of right, apply for a rehearing unless brief was filed with the clerk upon the original hearing within fifteen days after submission of the cause containing a certificate that a copy of same was served within said time upon counsel for appellant. An extension of time for filing such brief by any justice upon re-

quest of counsel will not suspend this rule so as to entitle the appellee to apply for a rehearing unless a brief was filed within fifteen days as above provided. This rule shall not apply in criminal cases except when the appellant files a brief upon submission of the cause."

■ An examination of the history of this appeal will clearly indicate that the above rule has not been observed. It follows, therefore, that the application for rehearing must be stricken. It is so ordered.

Application stricken.