67 So.2d 847

**MUTUAL SAV. LIFE INS. CO. v. ECHOLS.**

**8 Div. 35.**

Court of Appeals of Alabama.

June 2, 1953.

Rehearing Denied Aug. 11, 1953.

Russell W. Lynne, Decatur, for appellant.

Thos. C. Pettus, Moulton, for appellee.

PRICE, Judge.

Plaintiff, as beneficiary, brought suit on a policy of insurance in the amount of $300, issued by defendant on the life of Dike Echols. This appeal is prosecuted from a verdict and judgment in the lower court in favor of plaintiff.

Appellant contends the policy had lapsed for nonpayment of premiums and assigns as error the refusal of the general affirmative charge requested by it in writing.

The policy was issued on September 29, 1947. The premium was 30 cents weekly.

Plaintiff testified her husband had a policy of burial insurance with defendant, and on September 29, 1947, the life policy No. XX–3597431 was issued. The premiums on both of these policies were paid until his death on July 30, 1948.

The policy sued on was in plaintiff's possession from the time of issuance until it was turned over, with the burial policy, to Carl Sykes, the undertaker who buried insured. It has not been paid by appellant. The policy was introduced in evidence as plaintiff's Exhibit 1.

It is the appellant's contention that insured and the members of his family had several policies of insurance with defendant and all of said policies lapsed for non-payment of premiums on February 23, 1948, including the policy sued on. Most of the policies were revived, but according to Floyd M. Free, who was employed by defendant as a supervisor, when the question came up about the renewal of this policy insured said he didn't have enough money to pay it up, and it was explained to him that his age was such that he could take out a new policy for the same premium, but it would only carry half benefits the first six months. Insured replied he wasn't going to die in six months. Witness told him in order to keep in force and effect the old policy he would have to pay $1.50 that day, but instead of paying the $1.50 he only paid $1.20 and a new policy numbered XX–3643314 was issued. This policy was introduced in evidence as defendant's Exhibit 2. He stated that $1.50 would only have brought the old policy up to date, but the $1.20 carried the new policy on for four weeks and it would have taken $2.20 to carry the old policy four weeks.

After insured's death plaintiff obtained from defendant's agent $16.30 in cash and procured from its treasurer a check for $43.70. Defendant paid to Carl Sykes $290 and plaintiff gave a receipt for $350 to cover all claims against defendant on the burial policy and the new policy which was at half benefits.

Defendant furnished receipt cards. These were kept by plaintiff and signed by the agent collecting the payments. The receipt cards were in evidence but the number of the policy sued on does not appear on any of said cards.

Appellee contends the receipt card marked defendant's Exhibit "C" shows insured had two policies, in the amount of $300 each, and shows that premiums were paid on both through June 8, 1948. Plaintiff stated she had nothing to do with the numbering of the policies on the cards. Sometimes she was just given a receipt for a payment and all payments were not put on the cards. No other policy was ever given to her before Dike died.

Insured's uncle, Ben Echols, testified Mr. Free came to see him just before Dike's death and told him Dike had a couple of policies with defendant that were going to lapse unless $5.10 was paid on them. Witness borrowed this amount from his employer and paid it to Mr. Free, introducing in evidence a receipt for Dike Echols dated July 30, 1948, the day of insured's death.

Appellee also introduced a receipt from appellant's agent, E. R. Balch, to Dike Echols for $9.06 for "insurance to February, 1948" dated "2/23–48."

Mr. Free stated Mr. Balch was with him in Moulton on February 23, 1948, but the receipt was not issued in his presence. The $1.20 paid to Free was not included in the $9.06.

Mr. Balch testified the receipt was issued to give insured a record of past payments and that he got no money from insured that day.

Both of these witnesses testified no payment was made to them on the September policy after it lapsed in February.

■ The conflict in the evidence as to the fact of the payment of the premiums presented a question for the jury to resolve. There was no error in refusing the general affirmative charge. Sovereign Camp W. O. W. v. Adams, 204 Ala. 667, 86 So. 737; Watts v. Metropolitan Life Ins. Co., 211 Ala. 404, 100 So. 812; North Carolina Mutual Life Ins. Co. v. Jones, 33 Ala.App. 77, 30 So.2d 270.

■ · After consideration of the evidence, and allowing all reasonable presumptions in favor of the correctness of the verdict, we cannot say that the great weight of the evidence against the verdict is so decided as to clearly convince us that it is wrong or unjust. Cobb v. Malone & Collins, 92 Ala. 630, 9 So. 738.

Charge 4 requested by defendant was substantially covered by charges 2 and 6 given for defendant.

The judgment is affirmed.

Affirmed.

## On Rehearing

■ Insistence is made by appellant that we are in error in holding that refused charge 4 was substantially covered by given charges 2 and 6. If it should appear that this charge was not fully covered, then we are of the opinion it was abstract under the evidence. Mr. Free testified that his conversation with insured as to the renewal of the 1947 policy was on February 23, 1948, when he was told that in order to keep the policy in benefits he would have to pay $1.50 that day, and instead, insured only paid $1.20 and took out the new policy which came down dated March 8, 1948.

There was no evidence that after the lapse of the policy the question of its reinstatement was ever discussed.

Application overruled.